IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL GREENWALD<br>individually and on behalf of a class,<br><br>        Plaintiff,<br>v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT -- CLASS ACTION

1. Plaintiff Daniel Greenwald brings this class action against Northwestern University. Plaintiff seeks redress for individuals who paid tuition and fees for on-campus courses at the Northwestern University and who have not been refunded a prorated portion of those tuition and fees after the Northwestern University abruptly closed its doors to students and hastily shifted from the in-person, on-campus classwork for which Plaintiff and others paid, to online courses due to the Coronavirus Disease 2019 ("COVID-19").

2. Plaintiff and the members of the proposed class are students who paid millions of dollars in tuition and fees to Northwestern University and who, as a result of Defendant's wrongful acts, (i) have not received refunds or reimbursements for the unused services for which they paid; and/or (ii) have not received any refund or reimbursement for the decreased value of the education that Defendant provided when classes transitioned from in-person instruction to an entirely online, and far less valuable, format.

## JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. 1332(d). Plaintiff is a citizen of Maryland. Defendant is a citizen of Illinois. The amount in controversy, exclusive of interest

and costs, exceeds $5 million on a classwide basis. There are more than 100 class members.

## PARTIES

4. Plaintiff, a resident and citizen of Maryland, attended the Evanston campus of Northwestern University during 2019-2020.

5. Northwestern University is a non-profit educational institution organized under the laws of the state of Illinois with its principal place of business at 633 Clark St., Evanston, IL 60208.

## FACTS

6. Plaintiff enrolled in an MA program in Sound Arts and Industries during 2019-2020 and agreed to pay tuition in the amount of $65,536.

7. A material part of the program involves use of a studio with sophisticated equipment maintained by Northwestern University as well as other physical equipment.

8. Plaintiff would not have enrolled but for the studio and equipment.

9. Northwestern University emphasized the benefit of attending in person. A Northwestern publication, "Director's Welcome – Sound Arts and Industries," emphasized that:

    a. Persons enrolling in this program "have hands-on experience with the latest audio production technologies . . . ."

    b. "Students take advantage of Northwestern's state-of-the-art sound facilities, which include a newly renovated sound production lab, multiple sound editing stations, cutting-edge audiology facilities, and one of the best student radio stations in the country. Our students take advantage of a vibrant artistic and academic culture that is sustained through yearly conferences on emerging topics related to sound, as well as regular visits

       from world-famous professionals in sound science, sound studies, sound art, aural health and a range of sound industries."

   c.  "The creative environment at Northwestern gives our sound professionals the opportunity to develop as innovators and collaborators. The MA in Sound Arts and Industries is part of a suite of professional programs at Northwestern, and our students interact and collaborate with writers, filmmakers, artists, and performers in the MFA in Documentary Media, the MFA in Writing for Screen and Stage and the MS in Creative Enterprises."

   d.  "Our students take their unique set of knowledge and skills out into the world through the program's robust internship program. Our staff work closely with students throughout the year and draw upon a cohort of alumni and industry advisors that include executives at major Hollywood film studios and Academy Award-winning sound designers, as well as academics, researchers and entrepreneurs."

10. Another document, "Facilities – Sound Arts and Industries," stated that "Adjacent to WNUR-FM, this newly renovated 1,700 square foot sound studio and performance space can accommodate anything from a radio monologue to an 18-piece orchestra. SAI students use this space for classes and recording projects."

11. On March 11, 2020, Northwestern University announced that all classes would be held on-line and that in-person instruction would not be had:

Dear members of the Northwestern community,

As the coronavirus (COVID-19) continues to spread across the country and in Illinois, we

are taking significant steps, in consultation with Governor J.B. Pritzker's office, to prevent its spread on our campuses and protect the health and well-being of our students, faculty and staff.

First, for Northwestern schools that operate on the quarter system, we are extending Spring Break by one week. When classes resume, beginning April 4, they will be conducted remotely for at least three weeks. Classes that do not lend themselves to remote instruction will be addressed separately. University leaders will reassess the situation by April 17 and decide then whether to continue remote teaching or to return to in-person instruction by April 27. We will provide additional guidance on the transition to remote classes in the days to come. A website outlining essential resources for teaching has been established and will continue to be updated.

For NU-Q and Chicago-campus programs, which are in the middle of their terms, classes will be taught remotely beginning March 31, if not sooner. We will provide further details as quickly as we can.

We want to be clear — Northwestern University will remain in operation. Research will continue. The business of the University will continue. But we believe it is important to limit our community's potential exposure to COVID-19, and to limit the spread of the virus in our area, by conducting classes remotely, thus reducing the number of gatherings that can result in close contact.

Please keep in mind that the situation is fluid and as COVID-19 spreads, if something significantly impacts the safety of our community in the coming days, our plans could evolve.

**For Students**

Students who live on campus should plan to depart following their final exams and, if possible, should not return until further notice. We understand that some students consider Evanston or Chicago their home, and some, including international students, cannot leave the University at this time. The University understands that this is a difficult moment, and we will support you in the time ahead. Student Affairs will provide further details on resources tomorrow.

For students who remain on campus, residence halls will remain open, along with dining services. Northwestern Libraries and other resources will be available. Although most functions of the University will continue, some services could be limited or operate under limited schedules and staffing. Additional guidance for those who remain on campus will be provided shortly. All students — whether leaving campus or staying — should update their permanent address in CAESAR.

Given graduate clinical education includes in-person interactions to meet graduation requirements, we will proceed with clinical activities so long as they are consistent with

other University policies and educational sites remain open. We will operate under vigilant protocols to safeguard the health of students, patients, staff and faculty. Graduate research activities also will continue under similar circumstances.

**Faculty and Staff**

We know that some parents and caregivers in our Northwestern community have been or may be impacted by closings at daycare providers or schools or the loss of other caregiver support. Northwestern's schools, departments and other units should err on the side of flexibility when deciding whether to let their employees work from home in order to care for their children or attend to other family responsibilities.

We ask that instructors be flexible in how they approach the remaining two weeks of Winter Quarter. While many final assignments will be able to move forward as planned, we strongly encourage you to consider alternative arrangements to a traditional final exam. Additional guidance for faculty will be coming shortly from the Office of the Provost.

We realize the changes outlined above are disruptive and present challenges. These decisions were made in consultation with health officials and with our community's protection in mind. A number of details must still be addressed, but we wanted to inform you of these changes immediately, so you can begin planning for the Spring Quarter. Your dean or vice president will write directly with additional guidance.

**Looking Ahead**

We are constantly evaluating the situation. Our goal is to communicate with you quickly and openly so that you can plan accordingly. Residential students who leave campus for Spring Break should take everything needed for your coursework, including textbooks, paperwork and other materials. We want to ensure you are able to do your work remotely.

For students who are set to graduate this spring, the University is evaluating the coursework required for you to complete your degrees and graduate on time. We anticipate Commencement activities will be held as scheduled.

Northwestern's COVID-19 website is the best source of information about the impact of the virus and provides answers to Frequently Asked Questions (FAQs). In addition, we have assembled a University team to field questions that are not addressed by the above-mentioned FAQs. Please email nu-covid@northwestern.edu or call 847-467-4111.

Although our team might not have immediate answers, they will work to find them for you. Nothing is more important than the health and well-being of our community. We truly appreciate your patience, your understanding and your partnership in this challenging time.

12. On March 19, 2020, Northwestern University sent the following communication to, among others, all students:

Dear Colleagues,

As the COVID-19 situation continues to unfold hour-by-hour, we wish to provide further guidance about who should be physically on campus during this unprecedented time. As of 5 p.m. Friday, March 20, and for the two-week period through Friday, April 3, 2020, only individuals who are essential to Northwestern's ongoing operations can remain physically on site. *Even for individuals who are considered essential, do not come to campus if you are experiencing symptoms.*

As you know from previous communications https://bulkmail.northwestern.edu/trk/click?ref=zstwe3vud_2-7cc8x3a171x06575&>, we have been continuously monitoring the COVID-19 situation and working with medical experts to assess the risk to our community. With the recent developments in the spread of COVID-19, we now believe that it is prudent for us to implement even stricter measures as we continue to follow CDC guidance <https://bulkmail.northwestern.edu/trk/click?ref=zstwe3vud_2-7cc8x3a1e2x06575&>. The University remains open and its core operations will continue, albeit in a new, more virtual environment.

*Academics*

The shift from one academic quarter to the next necessitates planning and certain on-site activity. However, we now face the additional challenge of transitioning from on-campus to remote courses for the beginning of the Spring Quarter.

Given the substantial effort needed to ensure that we are well prepared to deliver remote coursework that is in line with our exceptional academic curricula, the next two weeks may require certain faculty and staff to be regularly or sporadically onsite. Such key work processes, for example, might include ensuring IT infrastructure is ready to support remote course delivery, preparing faculty to teach and engage with students in a virtual environment, or converting course materials. Each school, department and faculty member could have different needs to ready for this change.

It is imperative that we prepare to resume classes in two weeks, and our faculty and staff will be instrumental in making this happen. . . .

13. As a result, since mid-March, Northwestern University students have been denied the bargained-for in-person instruction and access to facilities, technology, services, resources,

and other benefits for which Plaintiff and class members contracted for when they paid Defendant tuition and fees.

14. Almost all the course work in a Sound Arts masters degree involves listening to various recording, audio edits, etc. through state-of-the-art speaker systems. Because a significant amount of fidelity is lost over video conference calls the student's educational experience is severely diminished.

15. On April 30, 2020, Northwestern informed students that tuition would not be adjusted.

16. Subsequent requests by Plaintiff pointing out the nature of his program were also rejected.

17. On August 13, 2020, Plaintiff and other students in his program were informed that they could withdraw for a quarter, but that their transcripts would show that. This is a significant detriment.

18. Despite failing to hold in-person classes, forcing students into online classes that are a shadow of the in-person instruction students expected to receive and for which they paid, and denying students access to a wide range of on-campus services and benefits, Defendant has not otherwise adjusted the amounts paid by Plaintiff and class members.

19. Plaintiff and other class members have lost the benefits of the education, services, extra-curricular opportunities, and other experiences that Defendant promised them. Although it has failed to fulfill its obligations to students and their families, Defendant is currently unlawfully retaining and refusing to fully or partially refund Plaintiff's tuition and, except as noted above, fees, despite the dramatically lower quality and less valuable education and services Defendant provided.

20. Plaintiff and class members paid Defendant for access to buildings and facilities that students were not permitted to enter, equipment and technology that they could not use, internships in which they could not participate, and much more. Additionally, Plaintiff and class members paid Defendant for a quality of instruction, which, due to the abrupt shift to online learning, Defendant did not deliver. Defendant is thus profiting from COVID-19, asking students and their families—many of whom have been laid off, become ill, lost loved ones, or are otherwise suffering significantly—to bear the financial brunt of the pandemic. The result is an enormous windfall to Defendant. Both contract and equity demand that Defendant disgorge its ill-gotten funds.

21. Plaintiff brings this class action for relief from Defendant's illegal, inequitable, and unfair retention of the funds paid by Plaintiff and the other individuals in the proposed class.

22. This lawsuit seeks disgorgement and monetary damages in the amount of prorated, unused amounts of tuition and fees that Plaintiff and the other class members paid, the benefits of which were not provided by Defendant, including the difference in value between the live in-person classes for which students enrolled compared to the lesser online versions of classes that Defendant has provided to them for the duration of the campus closure.

23. By abruptly closing Northwestern University in March 2020, transitioning all in-person classes to online teaching, sending students home, and significantly reducing resources and opportunities available to students, Northwestern University failed to deliver the educational services, facilities, technology, activities, and other resources for which Plaintiff and class members contracted and expected to receive. Plaintiff and the proposed class are therefore entitled to a prorated refund of tuition and fees for the duration of Northwestern University's COVID-19-related closure for the education and services that Defendant did not provide, or

which Defendant provided in a severely diminished manner.

## CLASS ALLEGATIONS

24. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this action on behalf of a class and subclass.

25. The class includes all persons who (i) paid tuition to Northwestern University of Illinois for a class or classes (ii) which class was an in-person class, and (iii) did not receive the in-person education for which they paid.

26. The subclass includes persons enrolled in one or more classes (a) that Northwestern determined are "Classes that do not lend themselves to remote instruction" or (b) provided for work in a laboratory, sound stage, theatre, or similar physical facility.

27. The members of the proposed class are so numerous that joinder of all class members is impracticable. There are more than 5,000 members of the class. The class can be readily identified from enrollment and financial records maintained by Defendant.

28. There are questions of law and fact common to the class that predominate over any individual questions. These include:

    a. Whether Defendant retained money from the class members for services it did not render, or only partially rendered;

    b. Whether Defendant entered into a contract with the class members;

    c. Whether Defendant breached its contract with the class members;

    d. Whether Defendant benefitted from the money it accepted from the class members;

    e. Whether the educational and other services Defendant provided to the class members were commensurate with their value;

    f.  The formula for appropriate relief.

29. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

30. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

31. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible. The damages suffered by individual class members are relatively small compared to the burden and expense of individual litigation of the claims described herein against Defendant.

    b.  Individual actions would run the risk of creating inconsistent or contradictory judgments arising from the same set of facts and would increase the likely delay and expense to all parties involved and the Court itself.

## COUNT I – BREACH OF CONTRACT

32. Plaintiff incorporates paragraphs 1-31.

33. Plaintiff and the other members of the class entered into binding contracts with Northwestern University when they enrolled in exchange for payment or promises to pay specified tuition and fees.

34. These contracts are not based on an integrated document. They were formed by multiple documents when Defendant authorized students to attend, offered courses, quoted tuition and fees for the courses, and invited students such as Plaintiff to register for the courses.

35. As part of the contract, Northwestern University promised to provide on-campus educational services to Plaintiff and the class members.

36. By closing its campuses in mid-March 2020, Defendant has failed to provide the services that it was obligated to perform under its contracts with Plaintiff and the proposed class.

37. Defendant has retained tuition and part of the fees paid by Plaintiff and the other members of the class without providing them the promised benefits.

38. Plaintiff and the members of the class performed their obligations under the contracts by paying for tuition and fees.

39. Plaintiff and the members of the class were damaged as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and expected to obtain, and for which they have paid.

40. Plaintiff and the members of the class are entitled to damages including but not limited to prorated reimbursement of the tuition, fees, and other expenses that were collected by Defendant for services that Defendant failed to deliver fully.

41. Defendant's performance under the contracts is not excused because of COVID-19. Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

    a. Appropriate damages;

    b. Costs of suit;

    c. Such other and further relief as the Court deems proper.

## COUNT II –   RESTITUTION BASED ON QUASI-CONTRACT

42. Plaintiff incorporates paragraphs 1-31.

43. Plaintiff asserts this claim in the alternative to the breach of contract claim brought in Count I.

44. Plaintiff and the other members of the proposed Class conferred a benefit or enrichment on Defendant by paying tuition and fees to Defendant, which was beneficial to Defendant, at the expense of Plaintiff and the other members of the class.

45. Plaintiff and the other members of the class did not receive the goods and services Defendant was to provide.

46. Defendant has retained the benefit paid by Plaintiff and the class members despite its failure to provide the services for which the benefit was paid.

47. There is no justification for Defendant's failure to return the portion of the tuition and fees that Defendant has unjustifiably kept for itself even though it failed to complete the services for which Plaintiff and the class members provided the funds to Defendant.

48. Defendant has been unjustly enriched and should pay as restitution a prorated portion of the funds that Plaintiff and the proposed class paid for tuition and fees for the duration of the campus closure.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

    a. Appropriate damages;

    b. Costs of suit;

    c. Such other and further relief as the Court deems proper.

                                                */s/ Daniel A. Edelman*
                                                Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Cathleen M. Combs (ARDC 0472840)
Kasun Wijegunawardana (ARDC 6333546)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com